KURT J. OSBORNE et al., Respondents, *v.* BENJAMIN MILLER, Appellant, and GENERAL MOTORS CORPORATION, Respondent.

First Department, February 10, 1972.

*Bernard Botein* of counsel (*Benjamin H. Siff* and *Thomas R. Newman* with him on the brief; *Tropp, Goldfinger & Berson,* attorneys), for appellant.

*Jacob D. Fuchsberg* of counsel (*Donald Miller* and *Murray L. Lewis* with him on the brief; *Fuchsberg & Fuchsberg,* attorneys), for Kurt J. Osborne and another, respondents.

*Roy L. Reardon* of counsel (*Ross L. Malone* and *James P. Barrett* with him on the brief; *Simpson Thacher & Bartlett,* attorneys), for General Motors Corporation, respondent.

*Jacob Goodman* of counsel (*Fanelli, Otto & Bosco,* attorneys), for Harry R. Wheeler, respondent.

*Per Curiam.* In this personal injury action, defendant Miller appeals from a judgment aggregating $845,628.22 entered in favor of plaintiffs against him after a split jury trial.

Defendant's appeal also brings up for review an intermediate order which granted the Osborne plaintiffs' motion, after liability issues had been tried, to amend their complaint to increase an *ad damnum* clause from $350,000 to $1,000,000.

We take up first the appeal from the intermediate order.

In our opinion, it was an unwise exercise of discretion to grant the motion to increase the *ad damnum* clause. Accordingly, we reverse the order on the law, facts and exercise of discretion and deny the application. We have heretofore held in order to increase the *ad damnum* clause, the plaintiff must produce an affidavit showing the reasons for the delay in making the application and the fact the increase is warranted by reason of information which has recently come to the attention of the plaintiff and excusing the failure or negligence necessitating the amendment. (*Galarza* v. *Alcoa S. S. Co.*, 34 A D 2d 907; *Koi* v. *P. S. & M. Catering Corp.*, 15 A D 2d 775.) We have also previously held that an application of this nature should not be granted where the plaintiff is chargeable with inordinate laches or where the amount would unfairly prejudice the defendant. (*Galarza* and *Koi, supra.*)

The motion to amend the *ad damnum* clause was based on the affidavit of counsel. There was no affidavit from the plaintiff. There was no claim that the injuries suffered had developed into disability not known when the complaint was served.

The accident occurred August 8, 1965. The action was commenced in November, 1965. The bill of particulars was served in February, 1966. The extent of the injuries to Miss Osborne was clearly known to her attorneys at that time. Subsequently there were five pretrial conferences. The motion to increase the *ad damnum* clause was not made until the eve of trial on or about May 7, 1971 and was not granted until June 4, 1971 after the jury had brought in a verdict in favor of plaintiffs on the grounds of liability. (See *Natale* v. *Pepsi-Cola Co.*, 7 A D 2d 282, 284–285.) This relief was prejudicial to the defendant since it permitted plaintiff to argue for and recover an award far in excess of what the proof warrants.

Aside from these considerations we hold the verdict to be excessive. This young woman undoubtedly suffered and was severely injured in this accident. She has undergone pain and suffering and has sustained permanent impairment in the use of her right hand and arm and she walks with a limp as a result of permanent injury to her right leg. We do not disregard the courageous effort she made in overcoming these disabilities sufficiently to resume her studies and earn both a bachelor's

degree and a master's degree to be qualified and physically able to practice the profession of teaching; to be able to travel about the world alone and take up residence in a foreign land where she now lives. Photographs in evidence show the remarkable recovery that has been brought about. There are several factors that may well have entered into permitting the verdict to become excessive. After plaintiff obtained her master's degree, she journeyed to Europe, first to Germany and then to Majorca. The plaintiff decided to settle in Majorca where she now lives in her own apartment. The plaintiff never applied for a permanent teaching position anywhere in the United States. She was never refused such a position. After arriving in Majorca, plaintiff then took a position in an international school on the basis of a foreign pay scale completely out of line with the customary standards in the United States. In this position she was able on the trial to project her alleged loss of earnings. Over objection she was permitted to establish the starting salary of a teacher with no experience in New Rochelle. She was permitted to show subsequent raises, the fringe benefits received by members of the New Rochelle school system, the wage scale after 13 years tenure. This with no proof that she ever sought employment as a teacher in New Rochelle or that she was refused employment by reason of her injuries. Another factor which suggests itself is the court's failure to answer the jury's inquiry as to whether or not the award was subject to taxes. The size of the verdict may well reflect the jury's notion that the award was taxable and that she receive a greater allowance to assure that she receive a net award. (See *Towli* v. *Ford Motor Co.,* 30 A D 2d 319; *Domeracki* v. *Humble Oil & Refining Co.,* 443 F. 2d 1245; *Dempsey* v. *Thompson,* 363 Mo. 339; 2 Harper and James, Law of Torts, § 25.12; Ann. 63 ALR 2d 1393, also supplement with later case service, p. 612.)

In evaluating the excessiveness of the award, we have considered its present valuation, the final income produced thereby and we have reached the conclusion that the verdict as reduced is in a sum that will reasonably compensate the plaintiff for her sufferings and incapacity. We have also taken into account the usual income produced by such a sum of money. (*Zaninovich* v. *American Airlines,* 26 A D 2d 155, 159–163.)

The intermediate order entered June 4, 1971, granting the motion of the plaintiffs Osborne to amend their bill of particulars and to amend their complaint to increase the *ad damnum* clause therein from $350,000 to the sum of $1,000,000 should be

reversed, on the law, on the facts and in the exercise of discretion, without costs, and the application denied.

The judgment entered July 22, 1971, should be modified, on the law, on the facts and in the exercise of discretion, to the extent of granting a new trial as to plaintiff Carroll June Osborne against defendant-appellant Benjamin Miller, with costs to abide the event, unless plaintiff Carroll June Osborne, within 20 days of service upon her by the defendant-appellant Benjamin Miller of a copy of the order entered herein, stipulates to accept $300,000 in lieu of the $800,000 awarded her by verdict, in which event the judgment in favor of plaintiff Carroll June Osborne as so reduced and amended and the judgment in all other respects should be affirmed, without costs and without disbursements.

McGivern, J. (dissenting). The majority have in effect, by a Hobson's choice, reduced the verdict of the jury by a half a million ($500,000) dollars. Unless, she chooses not to stipulate.

The sole issue discussed as error warranting reversal is the granting of a motion by plaintiff's counsel to amend the *ad damnum* clause so as to escalate the demand of the plaintiff, Carroll Osborne, from $300,000 to $1,000,000. The majority would reduce the verdict to the original demand. Liability is unchallenged.

But, the granting of such a motion is indisputably within the sound discretion of the trial court. So, the only question before us is: Did the Trial Judge improperly exercise or abuse his discretion? I fail to see how he did. Indeed, I respectfully submit if there be any abuse, it is that enacted by the majority herein. Nor do I believe his granting this routine motion alone warrants a reversal and another protracted trial. The delay in bringing on the motion was reasonably explained. The accident occurred on August 8, 1965. The complaint, dated November 5, 1965, demanded judgment for said plaintiff in the sum of $300,000. The bill of particulars, served on February 15, 1966, put the defendants on notice of a reservation " to prove further and additional damages ". And the request to amend, dated May 7, 1971, explained the necessity of an increase in the demand by virtue of new factors not clear when the complaint was served and of changed circumstances in the status of said plaintiff, no longer a student, and that now an estimate of present and future loss of earnings could be projected. It was no mere afterthought; there was a solid basis for the request as evidenced

by the size of the verdict and the post-trial approval of the Trial Judge.

Since such an amendment "merely informs an adversary of the maximum amount of the claim asserted" (*Natale* v. *Great Atlantic & Pacific Tea Co.*, 8 A D 2d 781), the defendants "cannot seriously urge that they have been prejudiced". (*Soulier* v. *Harrison*, 21 A D 2d 725.) Further, the request did not purport to alter the course or attempt to change the theory of the plaintiff's case. And, an able and experienced Trial Judge approached the question with the most cautious circumspection. Although the motion was made on May 7, 1971, and the trial did not begin until May 20, 1971, the court did not finally grant the motion until June 4, 1971. This scarcely qualifies as an "on the eve of trial" motion, and no one can say the Judge was precipitate. And the attorney for said plaintiff did not mention it before the jury. Indeed, he expressly consented to its omission in the Judge's charge. There was no need of a medical affidavit, as the request was based on plain mathematics and not medicine. Lastly, this court has permitted the absence of an affidavit by a plaintiff. (*Teplitsky* v. *Kamensky*, 9 A D 2d 671.) Thus, I do not see why the granting of this motion is worthy of the appellate displeasure expressed by the majority when it but accorded with a time-honored rule. "A party to an action ought to be permitted to put his pleadings in such shape as will enable him to raise and have determined at the trial every question affecting his interest involved in the subject-matter of the litigation" (*Muller* v. *City of Philadelphia*, 113 App. Div. 92, 96).

Nor do I find the citations of the majority on this question apposite. *Galarza* v. *Alcoa S. S. Co.* (34 A D 2d 907) involved the granting of a motion to amend during the trial and on oral application only. Similarly, *Natale* v. *Pepsi-Cola Co.* (7 A D 2d 282) involved an amendment granted on an oral application during the trial, without previous notice, and seven years after the complaint. In *Koi* v. *P. S. & M. Catering Corp.* (15 A D 2d 775) "these amendments were permitted almost nine years after the accident and after the cause had appeared on the Ready Calendar since 1958, having been adjourned some 95 times".

As for excessiveness, at the time of the accident she was but 19 years of age, a college student, with a working expectancy of approximately 40 years. She aspired to be a teacher, and made application to become a substitute teacher in New Rochelle High School. The average income of a young teacher today

is within the general knowledge of jurors. The majority concedes the seriousness of her injuries; and the evidence indicates she was left maimed and scarred, suffered the loss of use of the right arm, that she limped, had a pronounced foot-drag, and her injuries misaffected her ability to cook, dance, write, participate in games, etc., and not unnaturally, her chances of marriage. Considering that her life expectancy at the time of trial was 50.2 years, I cannot conclude there was no adequate basis for the verdict. And in any event, the Trial Judge had this to say on the verdict: " I *observed* Miss Osborne during the trial and could see, as all could see, *the obviously discernible physical aftermath of this accident.* * * * I am satisfied as to the extent of the permanency of these injuries. One cannot sit through a trial and hear this record and hear the reading from the hospital reports and hear the testimony of some of the finest experts in this field and not realize the consequences that have flowed from this accident * * * *I felt that this verdict would be in the area that this jury arrived at.* I can see absolutely no basis in this record to disturb this verdict. This young lady has received what I consider fair and just compensation in this case * * * For that reason I have spread my remarks upon the record so that any court reviewing this case will understand fully the feelings of the trial court and *the trial court's assessment of the evidence* and the propriety of the jury's verdict." (Emphasis supplied.) And we should give due regard to the estimate of a Trial Judge. As was recently said in *Omega Importing Corp.* v. *Petri-Kine Camera Co.* (451 F. 2d 1190, 1197 [2d Cir., Nov. 8, 1971]), by Chief Judge FRIENDLY: " An appellate court must indeed accept a district court's assessment of credibility, see Harlem River Consumers Cooperative, Inc. v. Associated Grocers of Harlem, Inc., 450 F. 2d 271, 274 (2d Cir. 1971) and give proper regard to its finding of facts, F. R. Civ. P. 52(a), *and even to its ' feel ' of the case.*" (Emphasis supplied.)

Other facets of the majority opinion are worthy of comment. The opinion states: " Photographs in evidence show the remarkable recovery that has been brought about." I find this statement perplexing. Two of the photographs merely show her standing immobile at a bus stop in Majorca, five years after the accident. The third photograph portrays a shadowy figure, back turned, stealthily proceeding down a darkened street. And in connection with the introduction of the latter picture, she testified, " Whether that's me or not, I can't tell."

Nor do I understand the reference in the majority opinion

to the subjct of taxes, and that " the size of the verdict may well reflect the jury's notion that the award was taxable ". Although I feel the Judge's treatment was well within *Towli* v. *Ford Motor Co.* (30 A D 2d 319) his charge was a consent charge, and so became the law of the case, unavailable on appeal. (*Swensson* v. *New York, Albany Desp. Co.*, 309 N. Y. 497, 501; *Brown* v. *Du Frey*, 1 N Y 2d 190, 195.)

Lastly, as I view it, the strictures in the majority opinion anent " present valuation ", " final income ", and income " produced by such a sum of money " (the verdict) — none of these concepts were adverted to or a pertinent charge requested by defendant's attorney; no foundation was laid for such considerations, and in respect of them, no request was made or exception taken. They have not been preserved for appeal. (*Kluttz* v. *Citron*, 2 N Y 2d 379, 384.)

To conclude: However, in view of broadening social principles, and what is fundamentally fair in an automotive age, and with a decent respect for a jury's verdict, reluctantly I would be willing to concur in a reduction to the sum of $500,000 as representing a more just resolution of this litigation and a figure not wholly incommensurate with the plaintiff's injuries and with what the briefs indicate is the defendant's actual plight.

STEVENS, P. J., McNALLY and MACKEN, JJ., concur in *Per Curiam* opinion; McGIVERN, J., dissents in an opinion, in which KUPFERMAN, J., concurs.

Order, Supreme Court, New York County, entered on June 4, 1971, so far as appealed from, reversed, on the law, on the facts and in the exercise of discretion, without costs and without disbursements, and the motion of plaintiffs Osborne to amend their bill of particulars and complaint denied.

Judgment, Supreme Court, New York County, entered on July 22, 1971, so far as appealed from, modified, on the law, on the facts and in the exercise of discretion, to the extent of granting a new trial as to plaintiff Carroll June Osborne against defendant-appellant Miller, with costs to abide the event, unless plaintiff Carroll June Osborne, within 20 days of service upon her by the defendant-appellant Benjamin Miller of a copy of the order entered hereon, with notice of entry thereof, stipulates to accept $300,000 in lieu of the $800,000 awarded her by verdict, in which event the judgment in favor of plaintiff Carroll June Osborne as so reduced and amended and the judgment in all other respects is affirmed, without costs and without disbursements.