■ JESUS GONZALEZ et al., Respondents, v TEXACO, INC., et al., Appellants.—In a negligence action to recover damages for personal injuries, etc., defendants appeal from an order of the Supreme Court, Kings County, dated October 18, 1978, which granted plaintiffs' motion for leave to amend the complaint by increasing the *ad damnum* clause and for leave to serve a supplemental bill of particulars. Order affirmed, with $50 costs and disbursements. Special Term was warranted in granting the motion to, *inter alia,* increase the *ad damnum* clause in view of the fact that it was only after the trial on the issue of liability that the hip replacement operation became necessary. Lazer, Gulotta and Shapiro, JJ., concur.

Cohalan, J., dissents and votes to reverse the order and to deny the motion, with the following memorandum, in which Damiani, J. P., concurs: After liability had been established in favor of plaintiffs in a bifurcated trial in this negligence action, and with full prior knowledge of the severity of

the injuries sustained by Jesus Gonzalez, the plaintiffs are now asking to increase the *ad damnum* clause in their complaint from an aggregate of $850,000 to one of $3,750,000. They also seek to amend the bill of particulars to show aggravation of injuries. The accident occurred on November 5, 1971. On or about November 3, 1972 service of the summons and complaint was effected, demanding a total of $850,000 in damages for personal injuries suffered by the plaintiff husband and loss of consortium for the wife. In a series of written reports, including that of a radiologist (Nov. 29, 1971), hospital record (Jan. 24, 1972) and letter of Jesus Gonzalez' own doctor (May 25, 1972), it was quite convincingly established that the condition of his right hip was such that it would eventually have to be replaced by surgical intervention. The bill of particulars, verified on August 23, 1973, indicated with specificity the condition of his hip almost two years after the accident. It noted that the injured plaintiff sustained, *inter alia,* the following personal injuries: "a. *Comminuted fracture dislocation of the hip with fragmentation and protrusion of the (pelvic) acetabulum* evidencing the breaking, cracking and shattering of the pelvic bone and accompanied by exquisite pain, tenderness, swelling and restriction of motion in the affected area. Said injuries required the immobilization of the plaintiff in various traction devices and further required his continuous *hospitalization for approximately 68 days.* Said injury has resulted in a *marked shortening of the right leg* (approximately one (1) inch), severe *atrophy of the leg and thigh* (two (2) inch difference) and extreme restriction of motion of the limb in all phases, all of which are *permanent* defects. Examination further reveals that patient also walks with a decided limp. b. *Diastasis fracture separation of the right sacroiliac joint* accompanied by exquisite pain, tenderness and marked restriction and limitation of motion and requiring various traction and/or immobilization procedures. Examination reveals restriction of motion in all phases and that the patient walks with a decided limp." The liability trial was held in January, 1977, at which time no application was made to amend the *ad damnum* clause. Not until June of 1978, well over six years after the accident, did plaintiffs move to supplement the bill of particulars and increase the *ad damnum* clause. Yet for years before the motion was made, the injured plaintiff had been flying every flag of physical distress, indicating a continuing degeneration of his right hip and the necessity for its replacement. We perceive no necessity, therefore, for any amendment respecting alleged aggravation of injuries. As to increased damages, it was noted in *Liggieri v Pasternack* (51 AD2d 731): "Plaintiffs have failed to establish that their injuries were greater than, or different from, those originally contemplated. In view of the late stage—the very eve of the trial as to damages—at which their motion was made, it was not error to deny them leave to increase the *ad damnum* clause (see *Jochnowitz v Sheehan,* 42 AD2d 707; *Collier v United States Trucking Corp.,* 49 AD2d 655; *London v Moore,* 32 AD2d 543." On the issue of prejudice, appellant Texaco* notes in its reply brief that because of the protracted delay, it may very well end up as a self-insurer for any amount above the face of its policy ($1,000,000). If the motion now before the court had been timely made, Texaco could have given proper and timely notice to its excess insurance carriers. Its position is now in jeopardy because of the delay, and in our view it has been definitely prejudiced as a result. It is most logical to assume that the other carriers, more than six years after the accident, will

---

* Texaco is treated as the appellant inasmuch as the codefendant, Pedro Medina, was its employee truck driver at the time of the accident.

resist any attempt by Texaco to bring them into the action at this thirteenth (not eleventh) hour. Not strictly in point but of interest on the question of demand for damages is the commentary of David Siegel, Esq., in his discussion of CPLR 3025 (Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3025:18 [Post-Verdict Amendment to Raise Demand Sum], p 488). Anent the amendment of the demand clause before the verdict, he noted that "At that stage it is permissible, albeit with varying degrees of proof required". He then added: "The attempt to raise the monetary demand by an amendment of the wherefore clause *after* the verdict *[on damages]* comes [in] is a horse of a different color. That one involves subdivision (c), not (b), of CPLR 3025 and the courts have shown surprising rigidity against such an amendment. The matter is thoroughly discussed in Commentary C3017:7 on McKinney's CPLR 3017, to which the reader is referred. Its moral will come home quickly: that it is indispensable in New York practice to see that the complaint, especially a personal injury complaint, initially demands so great a sum as to cover all conceivable contingencies" (bracketed material supplied). Finally we note the caveat expressed in *Walter v Le Cesse Corp.* (54 AD2d 1136): "Where a case has long been certified as ready for trial, judicial discretion in allowing amendments should be 'discrete *[sic]*, circumspect, prudent and cautious'." There the court reversed an order of Special Term which, *inter alia,* permitted an increase in the *ad damnum* clause and an amendment of the bill of particulars two and one-half years subsequent to the happening of the accident, not almost seven as in the case now before us.